### BAKER et al. v. STATE et al.
#### No. 8362.

Court of Civil Appeals of Texas. San Antonio.
March 5, 1930.

Rehearing Denied March 26, 1930.

Strickland & Ewers, of Mission, and Davenport, West & Ransome, of Brownsville, for appellants.

L. J. Polk, of Pharr, and Geo. P. Brown, of Edinburg, for appellees.

SMITH, J.

On January 3, 1928, the county judge of Hidalgo county ordered an election to be held on January 21, in common school district No. 16 in said county, to determine whether or not said district should be incorporated into an independent school district, designated as Ed Couch independent school district, as provided for in article 2757, R. S. 1925, as amended by the Act of 1927 (40th Leg. p. 353, c. 238, § 1). It is conceded that the election was regularly ordered in full compliance with the provisions of said statute.

On January 19, two days before said election occurred, the county board of school trustees of said county ordered a redistricting of the common school district adjoining and including district 16, by which certain portions of the latter, retaining its number, were cut off into adjacent districts 2 and 18.

Said election was held on January 21, as ordered, and was carried by a vote of 156 to 1, in favor of converting the district from common school district 16 to Ed Couch independent school district. The canvass of the returns of the election was delayed by the county judge, who, finally, on May 27, 1929, canvassed them in obedience to writ of mandamus issued by the district court and subsequently affirmed by this court. Cameron, County Judge, v. Baker, 13 S.W.(2d) 119. As a result of the canvass, the county judge entered an order declaring the result as above stated, and further declaring the territory formerly constituting common school district 16, duly incorporated into Ed Couch independent school district. In short, the district was legally transformed from the one into the other, by vote of the inhabitants thereof, in the manner and for the purposes provided by the statutes, and thereby became a legally constituted independent school district. And the board of seven trustees, having been elected thereto at the time of the incorporation, were duly and legally qualified and inducted into office, as the trustees of said independent district.

On the other hand, common school districts 2, 18, and 16, embracing the territory comprising the original district 16 (which became Ed Couch independent district as a result of said election), are still being operated as common school districts under the management of trustees duly elected therefor after the county board redistricted said territory, in the face of the pending election and subsequent adoption of incorporation, and to the exclusion of the trustees of the newly created independent district.

The present action, in the nature of a quo warranto proceeding, was brought by the state, on the relation of the trustees of common school district 18 (embracing a portion of said independent district), against the Ed Couch independent district and its trustees, to determine the legality of the latter district and whether or not its trustees may function, to the exclusion of the trustees of the common districts, over the territory embraced in the independent district. In short, it being obvious that both sets of trustees cannot function, it is necessary to determine which of the two has authority over the territory common to both districts. Or, stated in another form, the question presented by the appeal is, Did the county board of trustees have the power, by redistricting the territory involved, to circumvent and defeat the incorporation of the district into an independent district by a vote of the people at an election legally called and held for that purpose? The direct question does not appear to have been decided heretofore.

By the Acts of 1913 (page 259, c. 129) it was provided by the Legislature that the county commissioners' courts "shall subdivide their respective counties into convenient common school districts and designate them by number." Article 2741, R. S. 1925. It was also provided in said article that "said courts may reduce the area of any common school district," or create, consolidate, or change the lines of such district.

By the Acts of 1915 (page 70, c. 36) "County school trustees are authorized to exercise the authority heretofore vested in the county commissioners court with respect to subdividing the county into school districts, and to making changes in school district lines." Article 2681. This provision had the effect of vesting in the county trustees the powers granted in said article 2741 to commissioners' courts relating to subdividing, creating, consolidating, or changing the lines of common school districts. By these acts the county trustees were vested, generally, with the power of redistricting common school districts, as was sought to be done by them in this case.

By subsequent acts it was provided that any common school district containing 700 inhabitants or more may form an incorporation for free school purposes only, which "territory so incorporated shall hereinafter be called an 'independent school district.'" Acts 1927, 40th Leg. p. 353, c. 238, § 1. Provision

is made in said act for the creation of such district by vote of the inhabitants thereof, and these provisions were fully complied with in the creation of the Ed Couch district.

It is our opinion that when, in response to a legal petition therefor, the county judge ordered the election for the incorporation of common school district 16 into an independent district, the county board of trustees, pending said election, were shorn of their power under articles 2681 and 2741, to redistrict said territory or any part of it, and thereby deprive the inhabitants thereof of the right by their vote to incorporate it into an independent district, as provided in the act of 1927, then in force. The action of the county judge in ordering said election had the effect of suspending the power of the county trustees over the allocation of that territory for common school district purposes, and the subsequent adoption of the proposition to incorporate, by the inhabitants at the ensuing election, had the effect of establishing the independent district under the management and control of the trustees elected at the time of the incorporation, to the exclusion of its former status as a common school district. It follows, as a matter of course, that the trustees of the common school districts sought to be created out of the territory embraced in the incorporated independent district were thereby deprived of all power over the schools in that territory.

■ Appellees rely upon the powers given the county board of trustees by virtue of article 2681 as authority for such trustees to abolish the existence, or, as in this case, prevent the establishment, by vote of the people, of independent school districts. We do not find such authority, express or implied, in that article, in which it is provided, simply, that the county trustees are "authorized to exercise the authority heretofore vested in the Commissioners' Court with respect to *subdividing* the county into school districts, and making changes in school district lines." The authority theretofore vested in commissioners' courts to "subdivide" the county into school districts and "change the lines" of such districts, was granted in article 2741, as follows:

"Art. 2741. Establishment of districts.— The commissioners courts of all organized counties not already subdivided shall subdivide their respective counties into convenient *common* school districts and designate them by number. * * * Said courts may reduce the area of any *common* school district, create additional school districts, consolidate two or more adjacent districts, or subdivide any school district, if necessary for the interest of the school children; provided, no school district shall be established so as to contain less than nine square miles of territory. * * *" (Italics ours.)

It will be observed that by construing articles 2681 and 2741 together, as they must be, the powers therein transferred from the commissioners' court to the county trustees is expressly limited to those of "subdividing" and "changing the lines" of *common* school districts, as distinguished from independent districts. These powers are vested exclusively in the county board of school trustees, who may exercise them without reference to the county judge or commissioners or to any vote of the inhabitants of the county or districts affected.

■ On the other hand, independent districts may be created only by vote of the inhabitants of such districts, at the call, under the supervision, and upon orders of the county judge, without reference to the county trustees for any purpose. Article 2757, as amended in 1927. At the time this controversy arose, an independent district could be enlarged to include adjacent territory only by the board of trustees of such district, in response to petition of a majority of the inhabitants of the territory to be annexed, and after a hearing, as provided in article 2765, since repealed (Acts 1929, 41st Leg., 1st Called Sess., p. 106, c. 47, § 3). In such proceeding, the county trustees had no voice. It is provided in article 2767, that independent school districts "may be changed or abolished in the same way that is provided for the change or abolishment of a town and village or city and town, as provided by law" (chapter 19, title 28, arts. 1241–1263), in which proceeding the county board cannot participate.

■ It is further provided, in article 2766, that the commissioners' court "shall have the authority to change the boundaries of any *independent* district incorporated for free school purposes only," upon petition of the trustees of such district, and after a hearing thereon. We construe this article, having specific and express reference to independent districts, as having the effect of providing a distinct and exclusive method of changing the territorial limits of independent districts, as distinguished from common school districts; that by making this distinction the Legislature intended, with obvious wisdom, to provide a method of changing the boundaries of independent districts different and distinct from the method of changing the lines of common districts, and through different agencies.

Under that construction, common districts are created, and their territorial boundaries adjusted to changing conditions, by the county trustees, acting within their discretion, and without reference to the vote of the inhabitants thereof. Such districts are the creatures of the county board, whose powers over them are absolute so long as they are exercised in good faith. On the other hand, independent districts are the creatures of their inhabit-

ants, whose ballots, cast as in a general election, create them, thus giving them a distinct and higher status not occupied by the common districts, and removing them from the power of the county board to emasculate or dissolve. Any other construction would bring the statutes into conflict and enable the county trustees to exercise an unbridled power to override the will of the public, expressed at the polls under the sanction of the law.

We are not unmindful, are regretful, of the effect of these conclusions to overrule certain expressions, if not definite decisions, of some of our other Courts of Civil Appeals, to which we are unable to subscribe. Hill County School Trustees v. Melton (Tex. Civ. App.) 199 S. W. 1142; Martin v. School District (Tex. Civ. App.) 266 S. W. 607; Rosebud Independent School District v. Richardson (Tex. Civ. App.) 2 S.W.(2d) 513.

The judgment of the trial court is reversed, and judgment is here rendered that appellees take nothing by their suit. And further, it is the judgment of this court that the Ed Couch independent school district, with all the territory incorporated therein at said election, is, and it is hereby adjudged to be, a legally established and constituted independent school district under the laws of this state, and that the individual appellants herein are, and are hereby adjudged to be, the duly elected and qualified trustees of said independent school district, with all the powers and duties given by law to such trustees, to the exclusion of appellees. The costs of the appeal will be taxed against the relators.